IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JIMMIE AVEDISIAN AND ARTHUR AVEDISIAN, | : : : | |
| Plaintiffs, | : : | |
| and | : : | |
| PROVIDENCE PROPERTY AND CASUALTY | : : : | CIVIL ACTION NO. 1:09-CV-01473-CC |
| Plaintiff-Intervenor | : : | |
| vs. | : : | |
| BEHR PROCESS CORPORATION AND DOES 1-3, | : : : | |
| Defendant. | : | |

**OPINION AND ORDER**

This premises liability action is before the Court on Defendant Behr Process Corporation's Motion for Summary Judgment [Doc. No. 68]. Plaintiffs Jimmie and Arthur Avedisian claim in this case that Defendant Behr Process Corporation (referred to herein as "Defendant" or "Behr") is liable for the injuries Plaintiff Jimmie Avedisian sustained when she tripped and fell down stairs at one of Behr's facilities. Plaintiffs assert that Defendant knew or should have known of the existing hazardous conditions and that Defendant failed to create and maintain the premises in a safe, well-lit manner. Moreover, as a result of his wife's injuries, Plaintiff Arthur Avedisian brings a cause of action for loss of consortium. For the reasons stated herein, the Court **GRANTS** the Motion for Summary Judgment.

**I.  FACTS**

This case arises out of a trip and fall accident that occurred on May 8, 2007, when Mrs. Avedisian fell down the stairs of a Behr Process Corporation Warehouse Distribution Center (hereinafter the "facility") located in McDonough, Georgia.

(Defendant Behr Process Corporation's Statement of Material Facts in Support of Its Motion for Summary Judgment ("DSMF") ¶ 1.) The facility is a manufacturing and distribution facility supporting the paint needs of Wal-Mart, Home Depot, and Lowe's stores located in the Southeastern part of the United States. (Deposition of Behr Process Corporation's 30(b)(6) Witness Adam Aquino ("Aquino Dep.") at 11:24-12:2.) The facility is a 24-hour facility with drivers and employees entering and exiting the building throughout the night. (DSMF ¶ 20.)

The facility has a receiving procedure in place for drivers making deliveries. (See Aquino Dep. at 20:16-23.) As a part of this receiving procedure, when drivers arrive at the facility, they are required to pull into one of the two loading/receiving docks and check in and out at the shipping desk located inside the building. (Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1(B)(2)(b) "PSAF" ¶ 3.) After the driver checks in, the supervisor or foreman on duty then assigns the driver to a loading dock to unload their delivery. (Aquino Dep. at 20:16-21:1.)

Plaintiffs Jimmie and Arthur Avedisian are husband and wife and drive trucks for RRR Transportation. (DSMF ¶ 2.) On May 8, 2007, Plaintiffs were working as a team to deliver a load to the facility. (Id.) Prior to the night of their delivery, Plaintiffs had never been on the premises of the facility. (PSAF ¶ 1.)

On the night in question, Plaintiffs arrived at dock number 22 of the facility around 3:00 a.m. and waited for another driver to pull out from the receiving dock. (Deposition of Arthur Avedisian "Arthur Dep." at 14:1-7.) When Plaintiffs pulled into the dock, there were trailers about 45 feet long parked on each side of the loading/receiving dock staircase. (PSAF ¶ 5.) Plaintiffs recognized that the trailers parked on both sides of the staircase were blocking any available horizontal lighting that may have been in the area and caused the receiving dock staircase to be poorly illuminated. (Id.)

Mr. Avedisian exited his truck to head inside the building to check in his

paperwork at the shipping desk. (Arthur Dep. at 16:18-19.) Mrs. Avedisian had to use the restroom, so she got out of the truck and followed Mr. Avedisian towards the building. (Deposition of Jimmie Avedisian ("Jimmie Dep.") at 29:15-16.) Plaintiffs were able to locate the stairs because they had seen another driver ascend the stairs, and the lights from their truck reflected onto the staircase. (PSAF ¶¶ 6, 8.)

Plaintiffs walked up approximately six stairs to the landing outside of Door 4 – Shipping and Receiving. (DSMF ¶ 3.) Mr. Avedisian, who is "very observant" because of his military background, did not notice anything on the stairs or landing when they walked up. (DSMF ¶ 5; Arthur Dep. at 21:6-11.) Mrs. Avedisian followed Mr. Avedisian up the middle of the stairs. (DSMF ¶11.) On the way up, Mr. Avedisian opened the door for his wife and followed her inside the building to deliver their paperwork. (DSMF ¶¶ 4, 6.) There was no lighting under the overhang to illuminate the doorway into the building. (PSAF ¶¶ 7, 9.) The door in question has an alarm that sounds continuously when the door is open. (DSMF ¶ 21.)

Inside the building, the room was painted white and the lighting in the room was very bright. (PSAF ¶ 11.) Mr. Avedisian handed the employee at the shipping desk his paperwork, and the employee gave him a dock number to unload his delivery. (Arthur Dep. 20:22-21:2; Jimmie Dep. at 29:24-25.) After the check-in process, which took about five minutes, Mr. Avedisian headed outside to pull his trailer into the assigned loading dock. (DSMF ¶ 7; PSAF ¶ 12; Jimmie Dep. at 30:1-2.) Mr. Avedisian walked down the right side of the stairs by grabbing the railing and "feeling" his way down. (DSMF ¶ 8.)

After Mr. Avedisian left, Mrs. Avedisian remained inside the building to ask the employee if she could use the restroom, but the employee did not grant her permission to use the restroom. (PSAF ¶ 12.) Mrs. Avedisian then exited the building using the same door through which she had previously entered the building. (PSAF ¶ 12.) Since Mr. Avedisian had left the building minutes earlier,

Mrs. Avedisian walked outside alone.  (DSMF ¶ 12.)  The door slammed behind her, and she was "night-blinded."  (DSMF ¶ 12; PSAF ¶ 13.)  Mrs. Avedisian claims it was really bright inside the building and dark outside.  (DSMF ¶ 13.)

Because she could not see and is left-handed, Mrs. Avedisian grabbed the left handrail to go down the stairs and was looking down at the steps.  (DSMF ¶ 14; PSAF ¶¶ 13, 14.)  As she stepped forward with her left foot to descend the stairs, she tripped and fell.  (DSMF ¶ 1; Jimmie Dep. at 41:3-8.)   She claims she hit a wheel chock with her left toe, lost her balance, and fell down the stairs.  (DSMF ¶ 14.)  Plaintiffs maintain that the wheel chock was sitting on the landing at the corner of the top step and the rail.[1]  (DSMF ¶ 16; PSAF ¶ 14.)  Plaintiffs claim that it was so dark that they did not see the wheel chock on the way up or down the stairs.  (DSMF ¶17; PSAF ¶ 14.)

Mrs. Avedisian screamed for Mr. Avedisian for about two to three minutes.  (Jimmie Dep. at 41:9, 42:16-19, 21-23; Arthur Dep. at 25:8-12.)  Mr. Avedisian heard his wife scream and found her at the bottom of the stairs.  (DSMF ¶ 9; PSAF ¶ 23.)

The paramedics arrived at the facility, and Mrs. Avedisian reported to the EMT that she "mis-stepped" and fell down the stairs.  (DSMF ¶ 15.)  After the paramedics examined her and put her in a neck brace and on a backboard, she was transported to the hospital.  (Arthur Dep. at 26:17-20.)  Mrs. Avedisian sustained injuries to her left leg, left elbow, and left shoulder.  (Jimmie Dep. at 44:54-6.)

Mr. Avedisian remained at the facility to complete an accident report.  (PSAF ¶ 23; Arthur Dep. at 26:21-24, 27:10-22.)  He testified to having the following exchange with an unidentified person who he claims was a Hispanic employee of Defendant:

> A.   I said, I'm going with my wife to the hospital.  The supervisor said, No, you got to stay here, we got to unload you, you got

---

[1] The wheel chock was a triangular-shaped piece of black rubber about eight inches long and ten pounds in weight.  (PSAF ¶ 16.)

to make out - - I have got to make out an accident report. I was very upset. This is not like combat where you're calm, cool and collected. My wife was hurt and hurt bad. I saw blood. She had blood on her. Okay? The employee said, I'll give you a ride to the hospital later. So I backed the truck, finished backing the truck in.

Q. Which employee?

A. The Hispanic gentleman. I unhooked, I believe I parked my tractor, went inside. Now I've got to admit to you, I was kind of upset.

Q. Okay.

A. The guy says, I got to make out an accident report. I said okay. I said, Let's do it so I can get to the wife. He said, You do it, I don't know how. (Witness motioning.)

Q. Pushed it across the table to you?

A. That's correct. No. He pushed it right through the window.

Q. The delivery window?

A. That's correct. So it takes me a half hour to fill this out because I'm so upset. And I said, This is the supervisor's report. He said, I don't know how to make it out, you make it out. So I signed it. And then they took me to the hospital.

Q. Did that Hispanic employee take you to the hospital?

A. That's right. And he said, We been trying to tell them about that chalk [sic] for six months.

Q. That's what the Hispanic employee said to you on the way to the hospital?

A. That's right. That chalk [sic] was supposed to be here (indicating).

Q. Down by the dock to the right of the stairwell?

A. That's right. There is a ring on the end of that chalk [sic]. Okay?

Q. Okay.

A. There was a chain attached to this ring along attached to this ring down here.

Q. On the ground?

A. On the ground.

> Q. Not on the landing but on the ground next to the landing?
>
> A. On the ground next to the trailer to put it behind the tandems, the duals. I'm not being a wise guy. They put it up here - -
>
> Q. On the landing?
>
> A. - - on the landing specifically to hold the door open so they could get air.
>
> Q. And all of this that you're telling me right now, is that what the Hispanic employee told you?
>
> A. That's correct. Here's the landing.

(Arthur Dep. 26:20-28:25.) Notwithstanding Mr. Avedisan's testimony about his communications with this purported Hispanic employee of Behr, Plaintiffs do not dispute that no Hispanic employee of Behr was working at the time of the accident. (See DSMF ¶ 37; Plaintiff's Response to Defendant Behr Process Corporation's Statement of Material Facts in Support of Its Motion for Summary Judgment ¶ 37.)

Following Mrs. Avedisian's fall, Scott Williams, a Behr Dock Supervisor, and Gerald Jennings, a Dock Foreman, prepared incident reports documenting the fall. (DSMF ¶¶ 22-23.) Both reports indicated there were no unsafe mechanical or physical conditions present or noticeable. (Id.) However, the incident report completed by Mr. Williams indicates that Mrs. Avedisian did state that she fell down the stairs after stepping on a wheel chock. (PSAF ¶ 24.) Moreover, Mr. Jennings indicated on the incident report he prepared that a "trailer chock" was the "machine, tool, substance or object ... most closely connected with the incident or injury." (PSAF ¶ 25.) On an incident investigation form, which lists the investigators as Scott Williams and Gerald Jennings, there is a description of the incident as follows: "Jimmie Lou Avedisian indicates she tripped over a wheel chalk [sic] as she began down the stairs. Says this caused her to fall." (PSAF ¶ 26.)

Adam Aquino, manager of the facility's warehouse, arrived to work at 7:00 a.m., four hours after the incident. (DSMF ¶ 24.) Mr. Aquino went to the scene of the accident and did not see a wheel chock present at that time. (DSMF ¶¶ 24, 25.)

Mr. Aquino took photographs of the staircase, landing area, receiving door, and dock. (DSMF ¶ 26.) In the photos taken by Mr. Aquino, there was not a wheel chock present on the landing area of the receiving dock staircase. (Id.)

Mr. Avedisian returned to the facility in the afternoon, about twelve hours following the accident, and removed the wheel chock Plaintiffs contend caused Mrs. Avedisian's fall. (PSAF ¶ 17.) When he found the chock, it was down near a trailer. (Id.)

Defendant conducts monthly inspections of the facility, including the lighting, the staircase, and the landing area outside of Door 4.[2] (DSMF ¶ 30.) One of Defendant's employees, Alex Madrigal, conducted such an inspection of the facility on April 3, 2007, approximately one month before Mrs. Avedisian's fall. (DSMF ¶ 31.) On Mr. Madrigal's April inspection report, he indicated there were no issues with the lighting and no hazards found on the premises. (Id.) Mr. Madrigal also attests that he has never seen a wheel chock located on the staircase or landing area outside of Door 4. (Affidavit of Alex Madrigal ("Madrigal Aff.") ¶ 4.) According to Mr. Madrigal, if he had seen a wheel chock during a monthly inspection, he would have removed it. (DSMF ¶ 32; Madrigal Aff. ¶ 4.) On the inspection reports dated March 7, 2007, and May 14, 2007, Mr. Madrigal indicated that not all work and traffic areas were properly illuminated. (PSAF ¶ 21.) However, the inspection report by Mr. Madrigal dated April 3, 2007, indicated that all areas were properly illuminated. (Id.) Based on the facility's size, the light bulbs throughout the facility have to be replaced constantly. (PSAF ¶ 20.)

According to Mr. Aquino, there had been no falls at the facility before Mrs. Avedisian's fall. (DSMF ¶ 29; Aquino Dep. at 30:19-31:1.) Mr. Aquino additionally indicated that no other person has fallen down the receiving stairs outside of Door

---

[2] Although Defendant has failed to cite to evidence proving this fact, Plaintiffs have not disputed the fact or objected to Defendant's failure to cite to competent evidence. Accordingly, the Court exercises its discretion to deem the fact admitted.

4 on any other occasion. (DSMF ¶¶ 19, 34.) In fact, he maintains that on the day in question, other drivers entered and left the building without incident. (DSMF ¶ 36.)

## II. STANDARD OF REVIEW

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In seeking summary judgment, the moving party bears the initial responsibility to demonstrate there is no genuine issue as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The moving party's burden is discharged merely by showing that there is an absence of evidence supporting an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). The moving party is entitled to summary judgment when the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof. Celotex, 477 U.S. at 323.

A fact is material when the controlling substantive law identifies it as an essential element of the non-moving party's case. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Additionally, an issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. An issue of fact is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." Id. at 249-250. "[T]he mere existence of *some* alleged

- 8 -

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

### III.   ARGUMENTS OF THE PARTIES

#### A.   Defendant's Arguments

Defendant asserts that it is entitled to summary judgment because Plaintiffs have failed to establish the elements required to prevail in a trip and fall case. Specifically, Defendant maintains that Plaintiffs cannot demonstrate Defendant had superior knowledge of the alleged hazardous conditions for two primary reasons. First, Defendant argues that Plaintiffs have not shown Defendant had actual knowledge of the alleged hazardous conditions.  While Plaintiffs claim that there was a Hispanic man employed by Behr who made statements indicating that the wheel chock had been present for over six months in the location where Mrs. Avedisian fell and that Behr was aware of the hazardous condition, Defendant points out that Plaintiffs have been unable to identify the man and have been unable to prove through either direct or circumstantial evidence that he was a Behr employee. Accordingly, Defendant maintains that the unidentified man's purported statements constitute inadmissible hearsay, which cannot be used to defeat the summary judgment motion.  Second, Defendant urges that the evidence is devoid of support for the theory that Defendant had constructive knowledge of the alleged hazardous conditions.  In this regard, the fact is undisputed that Defendant conducted monthly inspections of the facility and did not find any hazards during the April inspection preceding Mrs. Avedisian's fall.  Defendant also emphasizes that there were no prior falls down the stairs where Mrs. Avedisian fell and that no hazards were reported by anyone else, despite Behr being a 24-hour facility with people constantly coming and going.

Defendant further submits the lighting conditions did not present a problem to either Plaintiff, as they both walked up the stairs and were aware of the lighting

conditions before entering the facility. Defendant also argues that Mrs. Avedisian had knowledge of the lighting conditions while descending the stairs and failed to exercise ordinary care. Defendant asserts that Plaintiffs' equal knowledge of the outside lighting obviates any obligation on behalf of Defendant to warn Plaintiffs of or protect them against the allegedly hazardous lighting conditions.

B.   Plaintiffs' Arguments

Plaintiffs maintain that the receiving area's inadequate lighting and a wheel chock left at the top of the receiving stairs were the existing hazardous conditions that caused Mrs. Avedisian to fall down the stairs at Defendant's facility. Plaintiffs argue that the dangerous conditions existed as a result of Defendant's negligence. Plaintiffs assert that Defendant knew or should have known of the potential risk presented by the poor lighting conditions and the dangerous location of the wheel chock.

In an effort to prove that Defendant had superior knowledge of the hazardous condition created by the alleged presence of the wheel chock, Plaintiffs rely heavily on the aforementioned statements of the unidentified man purportedly employed by Defendant. Plaintiffs maintain that the unidentified man was the same person who instructed Mr. Avedisian to fill out an incident report following Mrs. Avedisian's fall. Plaintiffs assert that the incident report listed Mr. Jennings as the dock foreman who reported the accident to Mr. Williams. Plaintiffs insist this is strong circumstantial evidence demonstrating that the man who made the statements was employed by Defendant and establishing Defendant's superior knowledge of the hazardous conditions.

Plaintiffs likewise contend that Defendant created the poor lighting conditions on its premises by controlling where to place the facility's light fixtures and when to replace the light bulbs. Moreover, Plaintiffs maintain that since the monthly inspection reports indicate that some external light bulbs may have burned out between the time inspections were conducted on April 3, 2007, and May 14, 2007, six

- 10 -

days after Mrs. Avedisian's fall, a reasonable jury could find that Defendant knew or should have known that the loading dock stairs were poorly illuminated.

Based on the foregoing, Plaintiffs insist that Defendant had superior knowledge of the hazardous conditions. Alternatively, Plaintiffs assert that even if a jury could find that Mrs. Avedisian should have seen the wheel chock and taken some additional precaution, such a finding would establish merely comparative fault and would not relieve Defendant of liability. As such, Plaintiffs argue that summary judgment is inappropriate.

## IV.   DISCUSSION

To prevail on a cause of action for negligence under Georgia law, the plaintiff must establish the essential elements of duty, breach of duty, proximate causation and damages. Black v. Georgia S. & Fla. Ry. Co., 202 Ga. App. 805, 806, 415 S.E.2d 705 (1992). Under Georgia law, the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe. O.C.G.A. § 51-3-1. By encouraging others to come on the property to further the purpose of the owner or occupier, the owner or occupier impliedly represents that reasonable care has been exercised to make the premises safe for those who come for that purpose, and that representation is the basis of the owner or occupier's liability for injuries sustained by an invitee in a "trip and fall" case. Robinson v. Kroger Co., 268 Ga. 735, 741, 493 S.E.2d 403 (1997) (citations omitted). Nonetheless, a property owner is not an insurer of the safety of entrants, and a mere showing that an injury occurred while on the premises of a proprietor is not sufficient, by itself, to create a presumption of negligence. Lee v. Food Lion, 243 Ga. App. 819, 820, 534 S.Ed2d 507 (2000); Cleghorn v. Winn Dixie Stores, 228 Ga. App. 766, 767, 492 S.E.2d 745 (1997).

To establish an owner's liability for injuries sustained in a "trip and fall" case, the plaintiff must plead and prove: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the

- 11 -

defendant's actions or to conditions under the defendant's control. Alterman Foods v. Ligon, 246 Ga. 620, 623, 272 S.E.2d 327 (1980). "The true basis for an owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of injury." Garrett v. Hanes, 273 Ga. App. 894, 895, 616 S.E.2d 202 (2005) (emphasis added).

> A. Actual Knowledge of Wheel Chock

In this case, there is an absence of evidence to establish that Defendant had actual knowledge of the wheel chock, on which Mrs. Avedisian allegedly tripped, being at the top of the stairs. Plaintiffs have attempted to demonstrate actual knowledge by relying on the statements of an individual whom Mr. Avedisian has described only as a "Hispanic employee." Plaintiffs assert that the statements constitute admissions by a party-opponent. Alternatively, Plaintiffs suggest the statements are admissible as excited utterances and/or statements against interest. The Court rejects Plaintiffs' arguments.

> *1. Admission by Party-Opponent*

Federal Rule of Evidence 801(d)(2)(D)[3] provides in relevant part that "[a] statement is not hearsay if ... [i]t is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." A party seeking to introduce an admission has the burden of establishing that "the content of the declarant's statement concerned a matter within the scope of his agency." Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1565, 1566 (11th Cir. 1991) (citations omitted). The Court must determine whether the speaker "was authorized to act for his principal ... concerning the matter about which he allegedly spoke." Id. at 1566

---

[3] "Under this circuit's controlling precedent regarding diversity jurisdiction cases, the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence." Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1395-96 (11th Cir. 1997).

(citation omitted).

Here, Plaintiffs have not sufficiently established the identity of the person at Behr who allegedly made the statements regarding the wheel chock and thus have not met their burden of establishing that the speaker was an agent of Behr and that his statements concerned a matter within the scope of his agency. Again, Mr. Avedisian described this individual only as a Hispanic employee, but Plaintiffs do not dispute that no Hispanic employee of Behr was working at the time of Mrs. Avedisian's fall. In Plaintiff's Brief in Opposition to Defendant Behr Process Corporation's Motion for Summary Judgment, Plaintiffs suggest for the first time that "[t]he man may have been African-American or an individual with a deep tan," (Doc. No. 74 at 16), despite Mr. Avedisian having described the alleged employee as "Hispanic" five times during his deposition and never having suggested that the alleged employee might have been African-American (Arthur Dep. at 26:11-12; 27:5-6, 23-25; 28:2-4, 23-25). Thus, even the vague physical description of the purported Behr employee is a moving target at this late stage of the litigation. The man allegedly instructed Mr. Avedisian to fill out an incident report, but Mr. Avedisian testified repeatedly that this individual had no idea how the incident report was to be completed. (See id. at 27:10-13, 19-22.) The best evidence that the individual had any affiliation with Behr whatsoever was that he obviously had access to an incident report form, as Mr. Avedisian testified that the individual gave him the form to complete. However, there is no evidence, for example, that the man was wearing Behr clothing, actually identified himself as a manager or employee of Behr, or interacted with other Behr employees. Even if the man was a Behr employee, the evidence proffered by Plaintiffs, including the statements allegedly made by the unidentified man, still is insufficient to enable Plaintiffs to meet their burden of establishing or even creating a genuine issue of material fact concerning whether the man was speaking about matters within the scope of his agency. See Wilkinson, 920 F.2d at 1566. Thus, the alleged statements made by this purported employee of

Behr are classic hearsay and do not qualify as admissions by a party-opponent.

### 2. *Excited Utterance*

There is a res gestae or excited utterance exception to the hearsay rule that Plaintiffs urge applies, but the alleged statements relied on by Plaintiffs do not fall within the exception. The Eleventh Circuit has stated the following regarding this exception:

> A hearsay statement is admissible under Rule 803(2) if it is one relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance.

United States v. Belfast, 611 F.3d 783, 818 (11th Cir. 2010) (internal quotation marks and citations omitted).

The Court finds that Plaintiffs have pointed to no evidence indicating that the alleged Hispanic employee observed Mrs. Avedisian's fall or otherwise witnessed events that would have caused him to be "under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). Nor has Plaintiff pointed to any evidence indicating that the alleged employee was "under the stress of excitement." To the contrary, the alleged employee did not come to the scene until after 9-1-1 had been called and around the time that the paramedics had arrived. (See Arthur Dep. at 25:10-26:12.) Prior to the alleged employee making the alleged statements at issue, he allegedly had instructed Mr. Avedisian that he needed to complete an accident report, had advised Mr. Avedisian that he would take him to the hospital, had waited for Mr. Avedisian to park his trailer, and then had waited approximately thirty minutes for Mr. Avedisian to fill out the accident report. (See id. at 26:22-27:22.) Then, at some point during the ride to the hospital, the unidentified individual allegedly made the statements that Plaintiffs seek to use as evidence against Behr. Plaintiffs provide no evidence concerning, for example, whether the

alleged employee made the alleged statements impulsively or without any prompting. See Montgomery v. United States, No. 2:06-cv-880-WKW, 2008 WL 2559398, at *6 n. 13 (M.D. Ala. June 23, 2008) (holding that a statement qualified as an excited utterance, because, in part, the statement was voluntary and spontaneous). What is clear, however, is that, while time lapse is not alone dispositive, the purported employee had ample opportunity to reflect and deliberate, which is counter to the statements qualifying as excited utterances. See Advisory Committee's Note on Fed. R. Evid. 803(2) (stating that the theory behind the exception is that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication"). In sum, this Court's consideration of the available evidence regarding the alleged speaker and the circumstances under which the speaker made the alleged statements indicates that the speaker did not make the alleged statements under the stress of Mrs. Avedisian's trip and fall or any events subsequent thereto. There simply is no evidence indicating that the unidentified individual was ever "in a state of excitement resulting from the event." See United States v. Cain, 587 F.2d 678, 681 (5th Cir. 1979). Accordingly, the "excited utterance" exception set forth in Rule 803(2) is inapplicable.

### 3. *Statements Against Interest*

Plaintiffs also suggest that the unidentified man's statements fall within the "statement against interest" exception to the hearsay rule provided in Federal Rule of Evidence 804(b)(3). This argument, too, is unpersuasive. Eleventh Circuit law states the following with respect to this exception:

> In order for a hearsay statement to be admitted under this exception, it must be "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."

Macuba v. Deboer, 193 F.3d 1316, 1327 n.19 (11th Cir. 1999) (quoting Fed. R. Evid. 804(b)(3)). Plaintiffs have not even attempted to argue how the unidentified man's

alleged statements in this case would possibly subject him to civil or criminal liability or be against his pecuniary or proprietary interest. Therefore, Plaintiffs have not met their burden of demonstrating the applicability of the exception.

      B.     <u>Constructive Knowledge of Wheel Chock and Lighting</u>

Plaintiffs alternatively assert that Defendant was on constructive notice of the hazardous conditions. Under Georgia case law, an owner or occupier has constructive notice of what a reasonable inspection would reveal. <u>Ballew v. Summerfield Hotel Corp.</u>, 255 Ga. App. 494, 496, 565 S.E.2d 844 (2002) (citation omitted). Moreover, a plaintiff can show a defendant's constructive knowledge of a hazard if the plaintiff can demonstrate: (1) an employee was in the vicinity and could have easily seen and removed the hazard; or (2) the hazard was present long enough that it would have been discovered through an inspection taken with reasonable care. E.g., <u>Heath v. Wal-Mart Stores East, LP</u>, 697 F. Supp. 2d 1373, 1379 (N.D. Ga. 2010) (citations omitted).

Plaintiffs assert that employees were in the vicinity of the staircase and could have easily removed the wheel chock at issue in this case. However, assuming that a wheel chock was at the top of the stairs on the landing, Plaintiffs' own testimony establishes that the presence of the wheel chock was not easily noticeable. Mr. Avedisian testified that he did not notice anything on the stairs or landing when he and Mrs. Avedisian walked up the stairs. Mrs. Avedisian similarly testified that she did not see the wheel chock on her way up the stairs. Furthermore, despite Behr being a 24-hour facility with customers and employees entering and exiting the building throughout the night, no other person saw the wheel chock and no other person fell down the stairs that night. There has been no admissible evidence presented as to who placed the wheel chock at the top of the stairs or how long it was there prior to the incident in question. Indeed, there is no evidence precluding the possibility that an individual not employed by Behr placed the wheel chock at the top of the stairs after Plaintiffs had gone inside. Thus, Plaintiffs have presented

no evidence that an employ of Behr in the vicinity could have easily seen and removed the hazard.

Plaintiffs likewise maintain Defendant had constructive notice of the hazardous conditions because Defendant reasonably could have discovered the loading dock's poor illumination and the presence of the wheel chock at the top of the receiving stairs through reasonable inspection procedures. The Court does not agree with these contentions. Defendant has presented evidence indicating the reasonableness of its inspection procedures. More specifically, Defendant conducted monthly inspections of the entire facility, including the facility's lights and loading dock stairs. Further, the evidence shows that an inspection was performed approximately one month before Plaintiff's fall, and the inspection revealed no issues with the lighting or hazards present that would place Defendant on notice of a potential hazardous condition. Moreover, Defendant has presented evidence that there had been no prior falls down the stairs in question, and Plaintiff has failed to show that the wheel chock was at the top of the stairs for a sufficient length of time such that Behr could have discovered it prior to Mrs. Avedisian's fall. Under these circumstances, Defendant is entitled to summary judgment on the issue of constructive knowledge. Patrick v. Macon Hous. Auth., 250 Ga. App. 806, 812, 552 S.E.2d 455 (2001) (affirming summary judgment on the issue of constructive knowledge where defendant had reasonable inspection procedures in place and defendant had no reason to believe there were any dangerous conditions in the area that could cause injury to the invitee); Dickman v. S. City Mgmt., 229 Ga. App. 289, 290, 494 S.E.2d 64 (1997) (affirming summary judgment on the issue of constructive knowledge where defendant regularly inspected the stairs and no other person traversing the same stairs fell before or after the litigated incident). In sum, the record reflects Defendant had reasonable inspection procedures that were followed within a reasonable time before Mrs. Avedisian's fall, which did not reveal any hazardous conditions. Therefore, the Court finds Plaintiffs have failed to point to

a genuine issue of material fact as to whether Defendant had constructive notice of the hazardous conditions.

### C. Equal Knowledge of the Inadequate Lighting

Plaintiffs also are precluded from recovering because Mrs. Avedisian had at least equal knowledge of any inadequate lighting on or around the staircase. See Gantt v. Dave & Busters of Georgia, Inc., 271 Ga. App. 457, 610 S.E.2d 116 (2005) (holding that plaintiff who had knowledge of hazardous condition at least equal to that of the defendant failed to show defendant's superior knowledge and was barred from recovery).  The evidence establishes that Mrs. Avedisian was aware of the amount of light on the stairs and landing before she entered the building.  Indeed, Mrs. Avedisian, prior to her fall, had recently gone up the very set of stairs that she later tumbled down.  Insofar as Mrs. Avedisian had successfully negotiated the stairs that very same night and was aware of the inadequate lighting when she decided to come back down those stairs, Defendant cannot be held liable for the inadequacy of the lighting. See Lake v. Atlanta Landmarks, Inc., 257 Ga. App. 195, 197, 570 S.E.2d 638 (2002) ("[Plaintiff] was aware of the amount of light in the theater. She had already walked upstairs to get to her seat and then walked down several more stairs before she fell. Moreover, if she thought it was too dark for her to walk down the stairs, it was incumbent upon her ... to inquire about alternatives."); Gray v. Oliver, 242 Ga. App. 533, 535, 530 S.E.2d 241 (2000) ("[W]here, as here, the plaintiff had as much knowledge of the hazard as did the owner, plaintiff assumes the risk as to the known condition by voluntarily acting in the face of such knowledge."); Roberts v. Gardens Servs., Inc., 182 Ga. App. 573, 573, 356 S.E.2d 669 (1987) ("[I]t is uncontroverted that appellant had climbed the same stairs only moments before her fall.  Appellant was thus aware of the lighting conditions and this awareness constituted equal knowledge on her part of any hazard presented by inadequate lighting.").

## V.  CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment. [Doc. No. 68].

SO ORDERED this <u>25th</u> day of <u>August</u>, 2011.


*s/  CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE